IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ORCHID AKRAMI, : | |
| BRENT CHESHIRE, : | |
| MINOO AKRAMI, and : | |
| ZOE CHESHIRE, : | |
| c/o JDKatz Attorneys at Law : | |
| 4800 Montgomery Ln, Ste 600 : | |
| Bethesda, MD 20814 : | |
| Plaintiffs, : | |
| ; | |
| : | Civil Action No. _____ |
| : | |
| : | |
| v. : | |
| | |
| THE ISLAMIC REPUBLIC OF IRAN,: | |
| THE ISLAMIC REVOLUTIONARY : | |
| GUARD CORPS, : | |
| c/o Ministry of Foreign Affairs : | |
| Khomeni Avenue, United Nations Street | |
| Tehran, Iran | |
| Defendants. | |

**COMPLAINT**

1. Plaintiffs Orchid Akrami, Brent Cheshire, Minoo Akrami, and Zoe Cheshire (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this action against Defendants the Islamic Republic of Iran and the Islamic Revolutionary Guard Corps (collectively, "Defendants" or "Iran") and allege as follows:

**JURISDICTION AND VENUE**

2. This is an action for compensatory and punitive damages pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1605A, arising from a systematic campaign of terror, torture, and persecution conducted by Defendants against Plaintiffs from 1979 to the present day.

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1330, 1331, and 1605A.

4. This action falls within the "terrorism exception" to sovereign immunity under the FSIA, 28 U.S.C. § 1605A(a)(1), which provides, in relevant part, that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case ... in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture ... [or] hostage taking ... if such act ... is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency."

5. This suit seeks money damages against Iran and its agencies and instrumentalities for injury and harm caused to the Plaintiff by acts of terrorism, torture, and other torts against Plaintiff.

6. These acts of terrorism and torture were perpetrated by officials, members, and agents of the IRGC and other agents and instrumentalities of Iran while acting within the scope of their official capacities.

7. Plaintiff is a U.S. citizen and national of the United States within the meaning of the FSIA and was such at the time of the acts alleged herein.

8. Defendant Iran has been designated a "state sponsor of terrorism" by the Secretary of State since January 19, 1984.

9. The Court has personal jurisdiction over Iran pursuant to 28 U.S.C. § 1330(b).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4).

## NATURE OF THE ACTION

11. The Iranian Government targeted and arrested Kayhan Akrami, subjecting him to torture and cruel treatment during his imprisonment from June 1979 to December 1980. At the time of his arrest, Kayhan Akrami was Vice President of Finance at General Motors in Tehran, properly employed and complying with all applicable Iranian laws.

12. Following Kayhan Akrami's arrest, Defendants seized the family's assets, issued death threats, and forced the family to flee Iran, leaving behind substantial property including $28,950,000 in real estate, land, gold bullion, jewelry, and cash.

13. For over forty years, Defendants have pursued a relentless campaign of terror against Plaintiffs, including surveillance, death threats, attempted murder, physical attacks, and psychological torture, both within the United States and abroad. This campaign continues to the present day.

**PARTIES**

14. Plaintiff Orchid Akrami was born on April 26, 1970, in Tehran, Iran. She is a U.S. citizen residing in Mission Viejo, California. She was nine years old when Defendants began their campaign of terror against her family.

15. Plaintiff Brent Cheshire, husband of Orchid Akrami, was born on May 4, 1971, in Long Beach, California. He is a natural-born U.S. citizen residing in Mission Viejo, California.

16. Plaintiff Minoo Akrami was born on August 9, 1932, in Tehran, Iran. She is the widow of Kayhan Akrami and mother of Orchid Akrami. She currently resides with Plaintiff Orchid Akrami in Mission Viejo, California.

17. Plaintiff Zoe Cheshire is the daughter of Orchid Akrami and Brent Cheshire. She is a natural-born U.S. citizen residing in Mission Viejo, California.

18. Defendant Islamic Republic of Iran is a foreign state that has been designated as a state sponsor of terrorism since January 19, 1984, pursuant to section 6(j) of the Export Administration Act of 1979.

19. Defendant Islamic Revolutionary Guard Corps (IRGC) is a branch of Iran's armed forces that was established following the 1979 revolution. The IRGC has been designated by the U.S. Department of Treasury as a sponsor and supporter of terrorism.

## STATEMENT OF FACTS

### I. Initial Persecution and Imprisonment (1979-1980)

20. In June 1979, armed IRGC agents stormed the General Motors offices in Tehran, where they arrested Kayhan Akrami at gunpoint. He was handcuffed, blindfolded, and transported to Evin Prison.

21. Upon arrest, IRGC agents informed Kayhan Akrami's family that they were coming to confiscate their home and would arrest or kidnap remaining family members.

22. Defendants placed Kayhan Akrami in solitary confinement for one month in complete darkness, permitting light only when guards opened a valve to provide minimal food. He remained in the same suit in which he was arrested throughout this period.

23. During his imprisonment, Kayhan Akrami was subjected to severe physical and psychological torture, including:

    a. Extended periods of complete darkness

    b. Sleep deprivation

    c. Physical beatings and constant lashing

    d. Psychological abuse

    e. Threats of execution

    f. Execution simulations, were he was placed in front of firing squads on a nightly basis, his head covered in a Burlap sack, and gunshots fired at him (this messed him up the most)

    g. Periods of starvation

    h. Hours and hours of interrogation lying to him about the status of his family & friends

4

   i. Subjected to cold showers in weather below 30 degrees, while being housed in Ervin prison, located in the cold mountains of Iran, when temperatures were at or below thirty-five (35) degrees Fahrenheit.

   j. Water torture

24. The Islamic Revolutionary Court charged Kayhan Akrami with espionage based solely on his employment with an American company, a charge carrying a potential death sentence.

25. Based on these pretextual charges, Defendants:

   a. Seized all family lands and assets in Iran

   b. Confiscated their home

   c. Froze all bank accounts

   d. Seized contents of their home safe containing:

   Land & Property deeds valued at more than $16,000,000.

   Gold bullion & gold coins (Shah's picture) valued more than $600,000.

   Family jewelry valued more than $4,000,000 (inclusive of jewelry sets & collections, inheritance, and heirlooms.

   Cash valued at more than $500,000.

   e. Seized their home in France valued more than $1,500,000.

   f. Seized their home in Iran valued at more than $5,000,000 which the Iranian government converted to an Embassy under the Islamic Regime.

   g. Seized 4 cars (since he worked for GM) worth - $200,000

   h. Collection of Mink coats (5 Total) - valued at more than $125,000.

26. During this period, Defendants issued a *fatwa* calling for the death of Kayhan Akrami, his wife Minoo, and their daughter Orchid.

**II. Family Flight and Continued Persecution (1980-1984)**

27. Following Kayhan Akrami's release in December 1980, Defendants forced him to work for an import/export company in Brussels, Belgium, under constant surveillance by a government minder.

28. Kayhan Akrami exhibited severe symptoms of PTSD following his release, including:

    a. Complete silence for one month

    b. Repetitive rocking motions

    c. Severe anxiety and paranoia

    d. Nightmares and flashbacks

    e. Inability to function normally

29. Between 1980 and 1984, Plaintiffs Orchid and Minoo Akrami attempted to flee Iran seven times but were prevented due to their placement on a government blacklist.

    30. In May 1984, Orchid and Minoo Akrami successfully escaped Iran when, due to Orchid's childhood lisp, guards misunderstood their family name and allowed them to pass through airport security.

**III. Systematic Campaign of Terror in the United States (1985-1993)**

31. Upon learning that the Akrami family had escaped Iran, Defendants escalated their campaign of terror, extending it to the United States. The campaign included:

32. Daily death threats by phone from individuals identifying themselves as Islamic Agents, who:

    a. Threatened to behead family members

    b. Referenced specific acts of violence against other Iranian dissidents

    c. Demonstrated knowledge of family movements and activities

    d. Made explicit references to orders from Ayatollah Khamenei

33. Physical surveillance and intimidation, including:

6

   a. Cars following Orchid Akrami to school

   b. Agents shouting death threats from vehicles

   c. Explicit threats of rape and dismemberment

   d. References to official Iranian government orders

34. The constant threats and surveillance caused severe psychological trauma to all Plaintiffs, leading to:

   a. Orchid Akrami developing severe anxiety and PTSD

   b. Minoo Akrami attempting suicide in 1985

   c. Kayhan Akrami's PTSD becoming severely debilitating

   d. Family members being afraid to leave their home

### IV. Escalation of Violence (1993-1997)

35. In 1993, Defendants intensified their campaign through direct acts of violence, including:

   a. The murder of Orchid Akrami's neighbor in California, accompanied by a voicemail stating, "you will be murdered next by the orders of Ayatollah Khamenei."

36. After Orchid Akrami relocated to Hudson, Ohio, Defendants:

   a. Left threatening notes on the family's door

   b. Marked their door with a red X, a known Iranian death mark

   c. Delivered written threats of kidnapping, rape, and murder

   d. Explicitly connected threats to the Islamic Government of Iran

37. In 1993, Defendants attempted to assassinate the entire family by poisoning Kayhan Akrami's employer, Mr. Pascal Mahvi, at Casa de Campo in the Dominican Republic, an act that would have resulted in the death of:

   a. Pascal Mahvi and his family

   b. Kayhan Akrami

   c. Other employees and staff

38. Between 1994 and 1997, Defendants conducted numerous attempts on Plaintiffs' lives in Ohio, including:

   a. Multiple attempts to force their vehicles off the road

   b. Extended surveillance operations

   c. Verbal threats accompanied by Islamic rhetoric

   d. Explicit references to orders from Ayatollah Khamenei

39. In Summer 1995, Defendants attempted to murder Orchid and Kayhan Akrami in St. Lucia by:

   a. Attempting to run them over with a vehicle

   b. Causing severe injuries to Kayhan Akrami's legs

   c. Requiring his hospitalization

   d. Forcing Orchid Akrami's hospitalization for trauma

   e. Shouting death threats and Islamic rhetoric during the attack

## V. Continued Persecution (1997-2018)

40. From 1997 to 2018, Defendants continued their campaign of terror, resulting in:

   a. Kayhan Akrami's PTSD becoming severely debilitating

   b. Required heavy medication with Lithium

   c. Family financial hardship

   d. Ongoing psychological trauma

   e. Continued surveillance and threats

## VI. Recent Attacks and Current Situation (2018-Present)

41. In July 2018, while in Washington D.C., Defendants:

   a. Attacked and clubbed Kayhan Akrami

   b. Left him severely injured

    c. Shouted, "death to America" and other rhetoric

    d. Explicitly stated they were acting on behalf of Ayatollah Khamenei

42.  During the same D.C. visit, Defendants:

    a. Threw rocks through windows of their residence

    b. Left threatening notes demanding release of Iranian property rights

    c. Made multiple threatening phone calls

    d. Attempted to force their vehicle off the road

43.  In August 2019, while in the South of France, Defendants:

    a. Physically attacked the family

    b. Pushed Orchid Akrami down a hill

    c. Made death threats

    d. Caused further physical and psychological trauma

44.  Currently, Defendants continue to:

    a. Harass and follow the family

    b. Park suspicious cars in front of their homes.

    c. Make death threats

    d. Mark their door with a red X weekly

    e. Make threatening phone calls

    f. Cause severe psychological distress to all family members as they live in constant fear of getting kidnapped, raped, or killed.

    g. As a direct result of Defendants' actions, Plaintiff has suffered severe physical and psychological trauma. The constant threats and attacks have forced them to relocate multiple times, and severely impacted their ability to maintain employment or normal social relationships.

## EVIDENCE OF IRANIAN GOVERNMENT DIRECTION AND CONTROL

45. The attacks and threats against Plaintiffs demonstrate clear patterns establishing Iranian government control and direction:

46. Official Authentication:

    a. Threats consistently invoke specific Iranian government officials

    b. Attackers demonstrate knowledge of internal Iranian operations

    c. Use of official Iranian government terminology

    d. References to specific government orders and fatwas

47. Operational Patterns:

    a. Multi-jurisdictional coordination requiring state resources

    b. Sophisticated surveillance capabilities

    c. Access to secure Iranian government records

    d. Use of documented IRGC methodologies

48. Strategic Timing:

    a. Attacks coincide with Iranian government actions

    b. Threats escalate following specific events

    c. Cross-border coordination indicating state organization

    d. Pattern of systematic persecution

49. Resource Deployment:

    a. Multiple operatives across different countries

    b. Detailed intelligence gathering

    c. International tracking capabilities

    d. Long-term surveillance operations

50. Consistent Messaging:

    a. Threats focus on Iranian government interests

    b. Demands align with government objectives

    c. Use of official religious and political terminology

    d. Consistent reference to government authority

## CLAIMS FOR RELIEF

### COUNT ONE:
### TORTURE OF KAYHAN AKRAMI AND CONTINUING PSYCHOLOGICAL TORTURE OF FAMILY

51. Plaintiffs incorporate by reference all preceding paragraphs.

52. Defendants' actions constitute torture under the FSIA, including:

    a. Physical torture of Kayhan Akrami

    b. Psychological torture of all family members

    c. Ongoing campaign of terror

    d. Systematic persecution

### COUNT TWO:
### HOSTAGE TAKING

53. Plaintiffs incorporate by reference all preceding paragraphs.

54. Defendants' actions constitute hostage taking under the FSIA through:

    a. Initial imprisonment of Kayhan Akrami

    b. Ongoing restriction of family movement

    c. Threats of violence to control behavior

    . Demands for property rights

### COUNT THREE:
### ASSAULT

55. Plaintiffs incorporate by reference all preceding paragraphs.

56. Defendants have committed multiple acts of assault, including:

    a. Armed threats

    b. Attempted vehicular homicide

  c. Physical attacks

  d. Death threats

## COUNT FOUR:
## BATTERY

57. Plaintiffs incorporate by reference all preceding paragraphs.

58. Defendants have committed multiple acts of battery, including:

  a. Physical attacks on family members

  b. Vehicular attacks

  c. Pushing and striking

  d. Other physical contact

## COUNT FIVE:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

59. Plaintiffs incorporate by reference all preceding paragraphs.

60. Defendants have intentionally caused severe emotional distress through:

  a. Systematic terror campaign

  b. Death threats

  c. Attacks on family members

  d. Ongoing persecution

## COUNT SIX:
## LOSS OF PROPERTY

61. Plaintiffs incorporate by reference all preceding paragraphs.

62. Defendants have caused significant property loss, including:

  a. Seized assets in Iran.

  b. Confiscated real estate.

  c. Stolen personal property.

  d. Economic losses from forced relocation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against all Defendants and request:

    A. Compensatory damages for:

        Physical injuries

        Psychological trauma

        Property loss

    Economic damages.

    B. Punitive damages.

    C. Reasonable costs and attorneys' fees.

    D. Such other relief as the Court deems just and proper.

    E. Such other and further relief as the Court deems just and proper.

Dated: 2/8/2025

                                        Respectfully submitted,

Jeffrey D. Katz Attorney for Plaintiff

Jared B. Stape, Attorney for Plaintiff

_____
Jeffrey D. Katz Bar# MD17071
JDKatz, P.C.
4800 Montgomery Avenue, Suite 600
Bethesda, MD 20814
Phone: (240) 743-5408
Email: Jeffrey@JDKatz.com

## VERIFICATION

I, ORCHID AKRAMI, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_____
ORCHID AKRAMI

Date: 01/20/25

## VERIFICATION

I, BRENT CHESHIRE, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*[signature: Brent Cheshire]*

BRENT CHESHIRE

Date: 1/20/2025

## VERIFICATION

I, ZOE CHESHIRE, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

*[signature]*

ZOE CHESHIRE

Date: 1/20/25

## VERIFICATION

I, MINOO AKRAMI, hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

_____
MINOO AKRAMI

Date: 1/20/2025